UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
URGENT ONE MEDICAL CARE, PC, *doing business as* DAVID E. SIMAI PEDIATRICS, *individually and on behalf of the class defined herein,*

        Plaintiff,

 -against-

CO-OPTIONS, INC., *doing business as* THE SAMPLING STORE, KRAFT HEINZ FOODS COMPANY, *and* KRAFT FOOD BRANDS LLC,

        Defendants.
----------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
21-CV-4180 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

 Presently before the Court in this Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, junk-fax advertising action, on referral from the Honorable Joanna Seybert for report and recommendation, are Defendants' Co-Options, Inc. ("Co-Options"), Kraft Heinz Foods Company ("Kraft"), and Kraft Foods Group Brands LLC ("Kraft Foods," together with Kraft, the "Kraft Defendants," and collectively with Co-Options, "Defendants") motions to dismiss Plaintiff Urgent One Medical Care, PC's ("Plaintiff" or "Urgent One") First Amended Complaint's class action claim (the "Class Claim") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on statutory grounds and failure to state a claim pursuant to Rule 12(b)(6) or, in the alternative, to strike the Class Claim pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  *See* Co-Options Notice of Motion to Dismiss or Strike ("Co-Options Motion" or "Co-Options Mot."), Docket Entry ("DE") [27]; Kraft

1

Defendants' Notice of Motion to Dismiss or Strike the Complaint in Part ("Kraft Motion" or "Kraft Mot.," together with the Co-Options Motion, "Defendants' Motions"), DE [28].

By way of Complaint dated July 26, 2021, later modified by Amended Complaint dated December 8, 2021, Plaintiff commenced this action against Defendants, alleging violations of section 227(b)(1)(C) of the TCPA. *See* Complaint ("Compl."), DE [1]; First Amended Complaint ("FAC"), DE [26]. Defendants seek dismissal of the First Amended Complaint's putative class claim on the pleadings. *See* Defendants' Motions. For the reasons set forth herein, the Court respectfully recommends that Defendants' Motions be denied in their entirety.

## I. BACKGROUND

### A. The Parties

Plaintiff is a medical practice and New York professional corporation that "maintains telephone facsimile equipment that automatically prints incoming faxes on paper using toner/ink." FAC ¶¶ 3, 15. Defendant Co-Options is a Connecticut corporation with its principal office in Apex, North Carolina. *Id.* at ¶ 4. Co-Options contracts with major manufacturers of "food and similar products," including the Kraft Defendants, to "distribute samples of such products, for the purpose of introducing them to the market and inducing consumers to purchase them." *Id.* at ¶¶ 5-6. Defendant Kraft is a Pennsylvania limited liability company with its principal offices located in Pittsburgh, Pennsylvania. *Id.* at ¶ 7. Defendant Kraft Foods is a Delaware limited liability company with its principal offices also located in Pittsburgh, Pennsylvania. *Id.* at ¶ 8. The Kraft Defendants are subsidiaries of

2

The Kraft Heinz Company and are responsible for the "development and marketing of the company's food and beverage products, including the Creative Roots product [line]." *Id.* at ¶¶ 18-20.

### B. Co-Options's Transmission of the Faxes

Prior to July 2020, the Kraft Defendants engaged Co-Options "to distribute over 300,000 child-sized bottles of Creative Roots products to parents and caretakers of children via pediatricians and other practitioners." *Id.* at ¶ 21. On July 20, 2020, and July 27, 2020, Plaintiff received a pair of unsolicited faxes advertising Creative Roots products (the "Faxes") on its facsimile machine, sent by Co-Options on behalf of the Kraft Defendants. *Id.* at ¶¶ 13-14, 17; *see also* FAC Exhibits A (July 20, 2020 Fax) & B (July 27, 2020 Fax). Urgent One had no prior relationship with Defendants, nor had it authorized or requested the Faxes. *Id.* at ¶ 26.

The Faxes advertised products that were commercially available and sought to have Plaintiff "distribute and recommend those products, as part of an overall marketing plan to sell the Creative Roots products." *Id.* at ¶ 23. Specifically, the Faxes, which were allegedly intended to "induce the recipients to obtain and offer free samples of the new Creative Roots products for the purpose of inducing consumers to purchase them[,]" explicitly stated that the program's purpose was "to get the word out on its new Creative Roots and provide parents and their kids with a chance to try them." *Id.* at ¶ 22. The Faxes, which were allegedly sent "as part of a mass broadcasting of faxes" to at least 40 other recipients within and outside of New York,

3

"d[id] not contain information on how to opt out of further faxes." *Id.* at ¶¶ 24, 27, 29.

### C. Procedural History

Based on the above, Dr. David Simai, Urgent One's owner, commenced this action against Defendants on July 26, 2021, alleging that Defendants violated his rights under the TCPA when they sent the Faxes to Plaintiff's facsimile machine unsolicited. *See generally* Compl. The Complaint, styled as a class action, sought to assert claims on behalf of all persons who, on or after a date four years prior to the filing of the Complaint, "were sent faxes by or on behalf of Defendant Co-Options Inc….promoting commercially available goods or services…where Defendants [did] not have evidence of consent or an established business relationship prior to the sending of the faxes," as well as a subclass "consisting of class members sent a fax on behalf of the Kraft Defendants." *Id.* at ¶ 39. The Complaint further alleges that, in addition to the Faxes sent to Urgent One, Defendants "have transmitted similar unsolicited fax advertisements to at least 40 other persons in New York and others elsewhere." *Id.* at ¶ 29. Through the Complaint, Dr. Simai sought: (1) actual and statutory damages; (2) an "injunction against the further transmission of unsolicited fax advertising"; and (3) costs. *See id.* at 7-8.[1]

On October 25, 2021, after Defendants filed pre-motion letters seeking to file motions to dismiss or, in the alternative, motions to strike the class definition, *see* DEs [9], [11], Judge Seybert directed Defendants to file their motions by November

---

[1] Plaintiff has not yet moved for class certification.

4

24, 2021, which they did. *See* October 25, 2021 Electronic Order; DEs [24], [25]. Plaintiff timely amended its Complaint on December 8, 2021, and substituted Urgent One as Plaintiff in place of Dr. Simai – all other allegations remained the same. *See generally* FAC. In light of the FAC's filing, Judge Seybert denied Defendants' November 24, 2021 motions without prejudice, and directed them to file renewed motions to dismiss on or before January 7, 2022. *See* December 9, 2021 Electronic Orders. Defendants filed their motions to dismiss the FAC or, in the alternative, to strike the class allegations, on December 21 and December 29, 2021, respectively, *see* Co-Options Mot.; Kraft Mot., which Plaintiff opposed on January 21, 2022. *See* Plaintiff's Omnibus Response to Defendants' Motions to Dismiss ("Plaintiff's Opposition" or "Pl. Opp."), DE [33]. On April 7, 2022, Judge Seybert referred Defendants' Motions to this Court for report and recommendation. *See* April 7, 2022 Electronic Order. For the reasons set forth below, the Court respectfully recommends that Defendants' Motions be denied in their entirety.

**II.    LEGAL STANDARDS**

   **A. <u>Motion to Dismiss for Lack of Article III Standing</u>**

Initially, Defendants move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing. To maintain Article III standing, a plaintiff must establish: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Doe v. McSweeney*, No. 21-cv-2191, 2022 WL 1451383, at *1 (2d Cir. May 9, 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. _, 141 S. Ct. 2190, 2203 (2021)); *see also Lujan*

5

*v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37 (1992). A plaintiff alleging an actionable injury in fact must establish "an invasion of a legally protected interest," and the injury must be: "(1) 'concrete and particularized'; and (2) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2130; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 1548 (2016).

"Particularized" injuries "affect the plaintiff in a personal and individual way[,]" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442-43 (2d Cir. 2022) (internal quotation marks omitted), while concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at _, 141 S. Ct. at 2206. Moreover, the Supreme Court recently clarified that a plaintiff "has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself." *Harty*, 28 F.4th at 442-43 (citing *TransUnion*, 594 U.S. at _, 141 S. Ct. at 2204-07; *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63-64 (2d Cir. 2021)).

When evaluating its jurisdiction under Rule 12(b)(1), including questions of standing, a court may properly consider facts outside the four corners of the Complaint. *See Kelly v. N. Shore-Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 284 (E.D.N.Y. 2016) (citing *Morrison v. Nat'l Austl. Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869 (2010)).

6

## B. Motion to Dismiss for Failure to State a Claim

Additionally, Defendants move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.

2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

### C. Motion to Strike

Finally, Defendants move pursuant to Federal Rule of Civil Procedure 12(f) to strike the FAC's Class Claim. Fed. R. Civ. P. 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may act on its own or "on motion made by a party either before responding to the pleading, or, if a response is not allowed, within 21 days after being served with the pleading." *Id.* "Motions to strike are generally disfavored, and should be granted only when there is a strong reason for doing so." *Westside Winery, Inc. v. SMT Acquisitions, LLC*, No. 19-cv-4371, 2020 WL 8413554, at *3 (E.D.N.Y. Nov. 5, 2020), *report and recommendation adopted sub nom. Westwide Winery, Inc. v. SMT Acquisitions, LLC*, 511 F. Supp. 3d 256 (E.D.N.Y. 2021) (quoting *Illiano v. Mineola Union Free School District*, 585 F. Supp.

8

2d 341, 357 (E.D.N.Y. 2008)). To prevail on a motion to strike, the movant must establish that: (1) there is no question of fact which might allow the claim to succeed; (2) there is no question of law which might allow the claim to succeed; and (3) the moving party would be prejudiced by inclusion of the claim. *See id.* (citing *Figueroa v. RSquared NY, Inc.*, No. 14-cv-4390, 2015 WL 3936256, at *2 (E.D.N.Y. Jun. 26, 2015)).

### D. The TCPA

"Under the TCPA, it is unlawful for 'any person within the United States' to send a fax that is an 'unsolicited advertisement' – unless, *inter alia*, the fax has an opt-out notice meeting certain requirements." *Bruce E. Katz, M.D., P.C. v. Dale Pharm. & Surgical, Inc.*, No. 20-cv-1876, 2022 WL 850528, at *2-3 (E.D.N.Y. Mar. 2, 2022), *report and recommendation adopted sub nom. Katz v. Dale Pharm. & Surgical, Inc.*, 2022 WL 843838 (E.D.N.Y. Mar. 22, 2022) (quoting *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*, 847 F.3d 92, 94 (2d Cir. 2017); 47 U.S.C. § 227(b)(1)(C)); *see also Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 370 (2d Cir. 2022) (*per curiam*).

An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5); *see also Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 537 (2d Cir. 2018). Notably, "the TCPA excepts a narrow category of unsolicited faxes," including "if the sender (a) has an

9

'established business relationship' with the recipient, (b) obtains the recipient's fax number through certain means, and (c) includes a detailed opt-out notice on the first page of the fax." *Gorss Motels, Inc. v. Fed. Commc'ns Comm'n*, 20 F.4th 87, 92-93 (2d Cir. 2021) (citing 47 U.S.C. § 227(b)(1)(C)(i)-(iii)); *see also Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 367 F. Supp. 3d 93, 112 (S.D.N.Y. 2019). The TCPA also "creates a private right of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations." *Physicians Healthsource, Inc.*, 847 F.3d at 94-95 (citing 47 U.S.C. § 227(b)(3)).

## III.   DISCUSSION

Defendants' Motions assert that the Class Claim: (1) should be dismissed from the FAC for lack of Article III standing; (2) should be dismissed on its merits for failure to state a claim; and (3) the class definition should be stricken because it: (i) is unsupported by the FAC's allegations; and (ii) pleads an illegal failsafe class. *See generally* Memorandum of Law in Support of Defendant Co-Options's Motion to Dismiss the Complaint ("Co-Options Memorandum" or "Co-Options Mem."), DE [27-1]; Memorandum of Law in Support of The Kraft Defendants' Motion to Dismiss or Strike the Complaint in Part ("Kraft Memorandum" or "Kraft Mem."), DE [28-1]. Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Defendants' Motions be denied in their entirety.

### A. Defendants' Rule 12(b)(1) Motion to Dismiss the Class Claim

Initially, Defendants assert that the Class Claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because while Urgent One may have standing to pursue its TCPA cause of action, "many absent class members have not suffered the 'concrete

10

injury' required to find standing under Article III." Co-Options Mem. at 2 (citing *TransUnion*, 594 U.S. at \_, 141 S. Ct. at 2208); *see also* Kraft Mem. at 4-5. Specifically, Defendants argue that some putative class members who received faxes from Defendants via online services lack Article III standing because they suffered no "concrete injury." *See* Co-Options Mem. at 3-9; Kraft Mem. at 4-14. The Court disagrees.

Applying the 12(b)(1) standards outlined above, the Court concludes that Urgent One has sufficiently pled facts to establish Article III standing for itself and the putative class, and respectfully recommends that Defendants' 12(b)(1) motions be denied. At the outset, while Defendants challenge the putative class's ability to establish an "injury in fact," they appear to concede that: (i) Defendants caused the alleged injury; and (2) the injury could be redressed by judicial relief. *See generally* Co-Options Mem.; Kraft Mem. Specifically applicable is the Supreme Court's recent ruling in *TransUnion*, which held that a plaintiff who seeks to base its "injury in fact" on an alleged statutory violation must also plead that it suffered an accompanying concrete injury, such as a "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." 594 U.S. at \_, 141 S. Ct. at 2205-06.

In the TCPA context, the Second Circuit has found that a corporation's "nuisance and privacy invasion" when receiving unsolicited fax advertisements and "occupation of a plaintiff's fax machine, as well as use of its paper and ink," are "among the injuries intended to be prevented by" the TCPA. *See Gorss Motels v.*

11

*Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir. 2021) (quoting *Palm Beach Golf Ctr.- Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (internal quotations omitted)); *see also Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-cv-649, 2021 WL 3827733, at *5 (W.D.N.Y. Aug. 27, 2021) (citing *Gorss Motels*, 997 F.3d at 476; *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019), *cert. denied*, _ U.S. _, 140 S. Ct. 677 (2019)). Consistent with this standard, Urgent One specifically alleges that it, and each class member suffered a "concrete injury" in the form of "time, paper and ink or toner consumed as a result" of receiving the Faxes. *See* FAC ¶ 35. Based on these statements, the Court concludes that Urgent One has pled facts in its First Amended Complaint sufficient to establish that it suffered an "injury in fact" as well as Article III standing for the Class Claim, and respectfully recommends that Defendants' Motions be denied on these grounds.

In reaching this conclusion, the Court rejects Defendants' arguments that the Class Claim must be dismissed for lack of subject matter jurisdiction because "a number of putative class members received the faxes at issue here by online services, not on fax machines connected to a phone line," a method allegedly not covered by the TCPA. *See* Co-Options Mem. at 3-9; Kraft Mem. at 4-14. In support of their motions, Defendants offer four declarations of "putative class members," upon whose statements they rely. *See* DEs [24-2]-[24-5]. Even if these declarations are accurate, the Court rejects them because none of the four declarants would be permitted to join Urgent One's proposed class. Indeed, each declarant states that the office in which

12

he or she worked "agreed to receive fax offers like [the Faxes]" from Defendants. *See* DEs [24-2] at ¶ 3; [24-3] at ¶ 3; [24-4] at ¶ 3; [24-5] at ¶ 3. These statements not only stand in stark contrast to Urgent One's instant factual allegations that it received the Faxes unsolicited, *see* FAC ¶¶ 13-14, 26, but also disqualify each of the declarants from joining Plaintiff's proposed TCPA class. *See* 47 U.S.C. § 227(b)(1)(C). As set forth above, in order to bring a claim under § 227(b)(1)(C), a plaintiff must allege that he or she received unsolicited faxes from an allegedly offending party. *See id.* Here, because none of the four declarants have alleged that they received their respective faxes unsolicited, or at the very least received the faxes outside of a previously established business relationship, they would be unable to join Urgent One's putative class. Accordingly, the Court disregards them. Without these declarations, Defendants' factually unsupported arguments that some putative class members lack standing are insufficient to establish the Court's lack of subject matter jurisdiction over the Class Claim. For these reasons, the Court respectfully recommends that the Rule 12(b)(1) component of Defendants' Motions be denied.

### B. Defendants' Rule 12(b)(6) Motions to Dismiss the Class Claim

Defendants next contend that the Class Claim should be dismissed on its merits pursuant to Fed. R. Civ. P. 12(b)(6) because, while the TCPA prohibits the transmission of unsolicited faxes to "telephone facsimile machine[s]," 47 U.S.C. § 227(b)(1)(C), "the particular harms Congress sought to address in the TCPA in connection with unsolicited fax advertisements are not present with online fax services." Kraft Mem. at 14-17; *see also* Co-Options Mem. at 9-10. To sustain its

13

claim brought under the TCPA's "junk fax" prohibition – 47 U.S.C. § 227(b)(1)(C) – Urgent One must plead facts to establish that it received the Faxes from Defendants unsolicited, and that the Faxes:  (1) were not a result of the parties' "established business relationship"; (2) were not sent after Defendants obtained Plaintiff's fax number through certain acceptable means; or (3) the Faxes lacked detailed opt-out notices on their first pages.  *See* 47 U.S.C. § 227(b)(1)(C).

Here, while the parties do not dispute that § 227(b)(1)(C) does not explicitly distinguish between unsolicited faxes received through traditional telefax machines and newer online methods, Defendants contend that the Court should adhere to the declaratory ruling issued by the Federal Communication Commission's ("FCC") Consumer & Governmental Affairs Bureau ("CGAB") in response to a petition filed by defendant AmeriFactors Financial Group, LLC in the matter of *Career Counseling, Inc. v. AmeriFactors Fin. Group, LLC*, No. 3:16-cv-03013, 2022 WL 286189, at *3 (D.S.C. Jan. 31, 2022), which stated that:

> an online fax service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity…to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" is not a "telephone facsimile machine" and thus falls outside the scope of the statutory prohibition.

*In the Matter of AmeriFactors Fin. Group, LLC Petition for Expedited Declaratory Ruling Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991 Junk Fax Protection Act of 2005*, No. 05-338, 2019 WL 6712128, at *3 (F.C.C. Dec. 9, 2019).  Since its issuance, however, the December 2019 *AmeriFactors* ruling – which is currently on appeal and pending review by the full FCC – has generated a split

14

among the courts. Indeed, some courts have agreed with, or at least deferred to the CGAB's ruling, *see Licari Family Chiropractic, Inc. v. Eclinical Works, LLC*, No. 8:16-cv-3461, 2021 WL 4506405, at *5 (M.D. Fla. Jan. 11, 2021) ("The Court concludes that *AmeriFactors*….[is] entitled to *Chevron* deference[.]"); *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 117-cv-01149, 2020 WL 4937790, at *3 (W.D. Tenn. Aug. 24, 2020) (same); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2020 WL 7664484, at *7 (N.D. Cal. Dec. 24, 2020) (holding that under Ninth Circuit precedent, "*AmeriFactors* is a final, binding order for purposes of the Hobbs Act"), while other courts have declined to follow or defer to the *AmeriFactors* ruling, *see Lyngaas v. Ag*, 992 F.3d 412, 427 (6th Cir. 2021); *Levine Hat Co. v. Innate Intelligence, LLC*, No. 4:16-cv-01132, 2022 WL 1044880, at *2 (E.D. Mo. Apr. 7, 2022); *Mussat v. IQVIA Inc.*, No. 17-cv-8841, 2020 WL 5994468, at *3 (N.D. Ill. Oct. 9, 2020), and at least one court has granted a stay in a matter that could be directly impacted by the full FCC's ruling on the *AmeriFactors* appeal. *See Advanced Rehab and Med., P.C. v. Amedisys Holding, L.L.C.*, No. 1:17-cv-1149, 2022 WL 1555240, at *2 (W.D. Tenn. May 17, 2022).

The Second Circuit, however, has not yet addressed the *AmeriFactors* ruling. A review of binding precedent, however, weighs against this Court's adherence to the *AmeriFactors* decision. Indeed, the *AmeriFactors* ruling's reasoning that, in enacting the "junk fax" prohibition, Congress was only concerned with the consumption of an unsolicited fax recipient's paper and ink, and not with the associated annoyance and consumption of time involved in reviewing such a fax, is inconsistent with the *Gorss*

15

*Motels* court's finding that a recipient's "nuisance and privacy invasion" when receiving unsolicited fax advertisements and "occupation of a plaintiff's fax machine, as well as use of its paper and ink," are "among the injuries intended to be prevented by" the TCPA. *See Gorss Motels*, 997 F.3d at 476 (quoting *Palm Beach Golf*, 781 F.3d at 1252). In light of *Gorss Motels*, and the inconsistencies of other courts considering this issue, the Court declines to adhere to the not yet final decision in *AmeriFactors*.

Based on the above caselaw, the Court concludes that Urgent One has pled facts to establish its TCPA "junk fax" claim, and respectfully recommends that Defendants' Rule 12(b)(6) motions to dismiss the Class Claim be denied. Initially, Plaintiff has pled that it received the Faxes from Defendants unsolicited, and that they: (1) were neither authorized by Plaintiff nor arose as part of an existing business relationship; and (2) contained no "information on how to opt out of further faxes." *See* FAC ¶¶ 13-14, 17, 24, 26. Moreover, the Court declines to adopt the *AmeriFactors* ruling. Accordingly, the Court concludes that Urgent One has sufficiently pled facts supporting its predicate TCPA "junk fax" claim, and respectfully recommends that Defendants' Rule 12(b)(6) Motions to dismiss the Class Claim be denied.

In reaching this conclusion, and for the reasons stated above, the Court again rejects the declarations of "putative class members" submitted by Defendants, s*ee* DEs [24-2]-[24-5], and declines to rely on the facts contained therein. Initially, the Court acknowledges that consideration of factual declarations in support of a Rule 12(b)(6) motion to dismiss is generally improper. *See Energizer, LLC v. MTA Trading, Inc.*, No. 20-cv-1583, 2021 WL 2453394, at *3 (E.D.N.Y. Jun. 16, 2021) (disregarding

16

a factual declaration annexed to the defendants' motion to dismiss); *see also Fossil Group, Inc. v. Angel Seller LLC*, No. 20-cv-2441, 2021 WL 5409605, at *8 (E.D.N.Y. Aug. 27, 2021), *report and recommendation adopted*, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)) ("Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself.").

The Court similarly rejects Defendants' argument that the Class Claim should be dismissed on its merits because "many businesses no longer maintain fax lines and fax machines, but instead subscribe to online services that receive faxes, digitize them into PDF files, and email the files to the subscribers[,]" *see* Co-Options Mem. at 2 (citing Ron Glaz & Holly Muscolino, *IDC White Paper: Fax Market Pulse* at 13-15 (2017) ("IDC White Paper"), reprinted at https://www.notesmail.com/home.nsf/ IDC_White_Paper_Fax_Growth_Security_ 2017-2019.pdf), because, outside of the rejected declarations, Defendants offer no factual support for this statement in any event. For these reasons, the Court respectfully recommends that Defendants' Rule 12(b)(6) motions to dismiss the First Amended Complaint be denied.

### C. **Defendants' Motions to Strike the Class Claim**

Defendants next seek to strike the Class Claim from Urgent One's First Amended Complaint, arguing that it: (1) defines a class that is unsupported by the FAC's facts; and (2) pleads an illegal "failsafe" class. *See* Co-Options Mem. at 11-14; Kraft Mem. at 17-22. Pursuant to Rule 12(f), this Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

17

matter." Fed. R. Civ. P. 12(f).  To prevail on their motions to strike, Defendants must establish that:  (1) there is no question of fact which might allow the Class Claim to succeed; (2) there is no question of law which might allow the Class Claim to succeed; and (3) Defendants would be prejudiced by inclusion of the Class Claim.  *See Westside Winery*, 2020 WL 8413554, at *3 (citing *Figueroa*, 2015 WL 3936256, at *2).

Applying these standards, the Court concludes that Defendants have failed to carry their burden on their motions to strike, and respectfully recommends that they be denied.  Initially, Plaintiff has established the existence of legal and factual issues which, if permitted to be borne out by the discovery process, might allow the Class Claim to succeed.  Specifically, Urgent One submits the following legal and factual questions, which, if resolved in Plaintiff's favor, may support a class claim:  (a) whether Defendants "engaged in a pattern of sending unsolicited faxes"; (b) whether "the faxes are advertisements"; (c) the "manner in which Defendants compiled or obtained the list of "recipient fax numbers"; (d) whether Defendants "thereby violated the TCPA"; and (e) the "responsibility and involvement of each Defendant."  *See* FAC ¶ 41.

Moreover, Defendants do not dispute that it would be possible through the use of self-identifying affidavits[2], a methodology endorsed by courts within the Second Circuit, to ascertain the class's size.  *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 24 (E.D.N.Y. 2020) ("Self-identifying

---

[2] In this context, affidavits could be sent to prospective class members that would ask them: (a) whether they received unsolicited faxes from Defendants within an identified time period; and (b) to identify the equipment upon which they received those faxes.

18

affidavits are an accepted means to establish a class member's entitlement to recovery in class action litigation."); *see also Audet v. Fraser*, 332 F.R.D. 53, 73-74 (D. Conn. 2019) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669-70 (7th Cir. 2015) (emphasizing that, with regard to class membership, courts can "rely on self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members" and "can tailor fair verification procedures to the particular case")). For these reasons, and because Defendants have not established that they would be prejudiced be the Class Claim's inclusion in Plaintiff's First Amended Complaint, the Court respectfully recommends that Defendants' motions to strike the Class Claim be denied, and that this matter be permitted to proceed to discovery.

In reaching this conclusion, Defendants' argument that the putative class falls outside the ambit of *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006), where the Second Circuit concluded that jurisdiction over a class only exists where that class is "defined in such a way that anyone within it would have standing," 443 F.3d at 264, misses the mark. As presently pled, the Class Claim encompasses:

> (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendant Co-Options Inc., (d) promoting commercially available goods or services (d) where Defendants do not have evidence of consent or an established business relationship prior to the sending of the faxes.

FAC ¶ 39. Setting aside Defendants' above-rejected arguments, they have failed to demonstrate that this definition would include members who lack Article III

19

standing. For this alternate reason, the Court respectfully recommends that the Rule 12(f) component of Defendants' Motions be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' Motions be denied in their entirety.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
              June 1, 2022           /s/ Steven I. Locke
                                           STEVEN I. LOCKE
                                           United States Magistrate Judge