**FILED**
**CLERK**

9/30/2022 2:59 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
URGENT ONE MEDICAL CARE, PC,
doing business as DAVID E. SIMAI
PEDIATRICS, individually and on
behalf of the class defined herein,

            Plaintiff,

      -against-

CO-OPTIONS, INC., doing business
as THE SAMPLING STORE; KRAFT HEINZ
FOODS COMPANY; and KRAFT FOOD
BRANDS LLC,

            Defendants.
-----------------------------------X

                                    ADOPTION ORDER
                                    21-CV-4180(JS)(SIL)

APPEARANCES

For Plaintiff:        Adam J. Fishbein, Esq.
                    ADAM J. FISHBEIN, P.C.
                    735 Central Avenue
                    Woodmere, New York  11598

                    Daniel A. Edelman, Esq.
                    Dulijaza (Julie) Clark, Esq.
                    EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
                    20 South Clark Street, Suite 1500
                    Chicago, Illinois  60603

For               Stephen R. Markman, Esq.
Defendant         LAW OFFICES OF STEPEHN R. MARKMAN
Co-Options:       90 Broad Street, Suite 1700
                    New York, New York 10004

                    C. Sanders McNew,Esq.
                    McNEW P.A.
                    2385 NW Executive Center Drive, Suite 100
                    Boca Raton, Florida  33431

```
For the Kraft          Tara Pehush, Esq.
Defendants:[1]         Justin Roeber, Esq.
                       David R. Osipovich, Esq.[2]
                       K&L GATES LLP
                       599 Lexington Avenue
                       New York, New York  10022

                       Molly K. McGinley, Esq.
                       HONIGMAN LLP
                       70 West Madison Street, Suite 3100
                       Chicago, Illinois  60602
```

SEYBERT, District Judge:

Plaintiff Urgent One Medical Care, PC, doing business as David E. Simai Pediatrics ("Plaintiff" or "Urgent One"), individually and on behalf of all others similarly situated, commenced this junk-fax advertising action, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendants Co-Options, Inc. ("Co-Options"), Kraft Heinz Foods Company ("Kraft Company"), and Kraft Foods Group Brands LLC ("Kraft Brands", and together with Kraft Company, the "Kraft Defendants"; collectively with Co-options, the "Defendants"). Defendants have moved to dismiss the class claim from Plaintiff's Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure arguing a lack of Article III standing and pursuant to Rule 12(b)(6) arguing the class includes claimants who

---

[1]  The "Kraft Defendants" encompass defendants Kraft Heinz Foods Company and Kraft Food Brands LLC.  (See ECF No. 59 at 3.)

[2]  Attorney Osipovich is located in K&L Gates' Pittsburgh, Pennsylvania office.

have no TCPA claim to assert; if necessary, they also move to strike the class definition pursuant to Rule 12(f).  (<u>See</u> (i) Co-Options: Dismissal Motion, ECF No. 27; Support Memo, ECF No. 27-1; Reply, ECF No. 34; (ii) Kraft Defs.: Dismissal Motion, ECF No. 28; Support Memo, ECF No. 28-1, Reply, ECF No. 35.)  Plaintiff opposes the dismissal motions.  (<u>See</u> Opp'n, ECF No. 33.)

By Report and Recommendation dated June 1, 2022, Magistrate Judge Steven I. Locke recommended that the Court deny Defendants' respective Dismissal Motion (hereafter, the "R&R" or "Report").  (<u>See</u> ECF No. 42.)  Defendants timely filed objections (<u>see</u> Co-Options' Obj., ECF No. 44; Kraft Defs.' Obj., ECF No. 43; collectively, the "Objections"), to which Plaintiff filed a response (<u>see</u> Obj. Response, ECF No. 45).  For the following reasons, the Defendants' respective Objections are OVERRULED, the R&R is ADOPTED, and the Co-Options' Dismissal Motion and the Kraft Defendants' Dismissal Motion are DENIED.

<u>BACKGROUND</u>

I.  <u>Facts</u>

The Court presumes the parties' familiarity with the facts as set forth in the R&R and recites only those necessary to adjudicate the Dismissal Motions.[3]  (<u>See</u> R&R at 2-4.)  By way of brief background, this case emanates from Plaintiff's receipt of

---

[3]  The Court assumes the parties' familiarity with the terms of art defined in the R&R and adopts them herein.

two unauthorized, "unsolicited faxes advertising Creative Roots products (the "Faxes") on its facsimile machine, sent by Co-options on behalf of the Kraft Defendants," with whom Plaintiff had no prior relationships.  (R&R at 3 (citing FAC ¶¶ 13-14, 17, 26).) The Faxes lacked information informing the recipient how to opt out of receiving further faxes.  (See id. at 3-4 (citing FAC ¶¶ 24, 27, 29).)

## II.  Procedural History and the R&R

Because Plaintiff contends the Faxes violate the TCPA's express prohibition on unsolicited fax advertising (see FAC ¶¶ 1-2), Dr. David Simai, as Urgent One's owner, initiated this putative class action on July 26, 2021.  (See R&R at 4.)  More particularly, he alleged "Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of time, paper and ink or toner consumed as a result.  Furthermore, Plaintiff's statutory right of privacy was invaded."  (Compl., ECF NO. 1, ¶ 35.)  Plaintiff brought his TCPA claim:

> on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendant Co-Options Inc., (d) promoting commercially available goods or services (d) where Defendants do not have evidence of consent or an established business relationship prior to the sending of the faxes.  Plaintiff also defines a subclass, consisting of class members sent a fax on behalf of the Kraft Defendants.

(Id. at ¶ 39.)

After timely amending the Complaint solely to "substitute[] Urgent One as Plaintiff in place of Dr. Simai" (R&R at 5), Co-Options and the Kraft Defendants each moved to dismiss Plaintiff's First Amended Complaint ("FAC"; ECF No. 26) or, alternatively, to strike the class allegations; Plaintiff opposed the Dismissal Motions.  On April 7, 2022, the Court referred the fully-briefed Dismissal Motions to Magistrate Judge Locke.  (See Apr. 7, 2022 Elec. Referral Order.)

On June 1, 2022, the Magistrate Judge issued his R&R, recommending: (1) disregarding the declarations of four putative class members submitted by Defendants (hereafter, the "Declarations") (see R&R 12-13, 16-17); (2) rejecting Defendants' Rule 12(b)(1) arguments regarding lack of standing since "Urgent One specifically alleges that it, and each class member suffered a 'concrete injury' in the form of 'time, paper and ink or toner consumed as a result' of receiving the Faxes" (id. at 12 (quoting FAC ¶ 35)); (3) rejecting Defendants' Rule 12(b)(6) arguments, which rely heavily upon a not-yet-final declaratory ruling issued by the Federal Communication Commission's Consumer & Governmental Affairs Bureau, known as the "AmeriFactors Ruling",[4] since "[t]he

---

[4]   See In the Matter of AmeriFactors Fin. Grp.. LLC Pet. for Expedited Decl. Ruling [re:] Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991 [and] Junk Fax Prot. Act of 2005,

Second Circuit . . . has not yet addressed the <u>AmeriFactors</u> [R]uling" and the <u>AmeriFactors</u> Ruling is inconsistent with binding Second Circuit precedent, <u>i.e.</u>, <u>Gorss Motels, Inc. v. Lands' End, Inc.</u>, 997 F.3d 470 (2d Cir. 2021) (<u>see</u> R&R at 14-16); and (4) rejecting Defendants' Rule 12 (f) arguments finding they "have failed to carry their burden on their motions to strike" in light of Plaintiff having "established the existence of legal and factual issues which, if permitted to be borne out by the discovery process, might allow the Class Claim to succeed" (<u>id.</u> at 18) and, alternatively, finding Defendants "have failed to demonstrate that [the Class Claim] definition would include members who lack Article III standing" (<u>id.</u> at 19-20).  In sum, Magistrate Judge Locke recommends this Court deny Defendants' Dismissal Motions in their entireties.  (<u>See</u> <u>id.</u> at 20.)

III.  <u>The Objections and Response</u>

    A. <u>Defendant Co-Options' Objections</u>

Co-Options first contends that the Magistrate Judge erred by misallocating the burden of proof regarding jurisdiction from Plaintiff to Defendants and improperly concluding "that Co-Options has failed to prove a lack of jurisdiction." (Co-Options Obj. at 2 (quoting R&R at 13; emphasis deleted).)  Co-Option continues, asserting that "[i]t is clear beyond dispute that some

---

Nos. 02-0278 & 05-0338, 34 F.C.C.R. 11950, 2019 WL 6712128 (F.C.C. Dec. 9, 2019).

large fraction of the putative class received the [Faxes] as emails sent from cloud fax servers." (Id.; see also id. at 3-4.) It maintains that this distinction must be considered in deciding whether Plaintiff has met its burden of proving jurisdiction. (See id. at 4.)

In a similar vein, relying upon the receipt-of-Faxes-by-email distinction, Co-Options argues the R&R errs by not addressing whether putative class members have suffered an injury sufficient to trigger Article III standing, since receipt of faxes by email does not entail the waste of paper and ink or the occupation of fax machines and fax lines. (See id. at 4; see also id. at 5-6 ("Emails do not cause the kinds of harm alleged in the complaint, and that have traditionally served as the grounds for alleging harm from unsolicited faxes -- the waste of paper and toner, and the occupation of fax machines and telephone lines.").)

Relatedly, Co-Options would have this Court find error in the Report's failure to consider whether businesses have privacy interests to assert as a basis for Article III standing. It posits:

> If the Report intended to reject Plaintiff's unpled privacy invasion as a ground for Article III standing in this case (because not pled, and not merited) then it erred by failing to state this conclusion. If the Report intended, by its passing reference to Gorss Motels, to uphold the argument, then it erred by concluding that businesses have

> privacy interests at common law on which
> Article III standing may be based.

(Id. at 7.)

Co-Options further alleges error in the Report on the basis that it "failed to consider Denney v. Deutsche Bank, AG, 443 F.3d 253 (2d Cir. 2006), in its jurisdictional analysis," arguing it "is central to the question of whether the Court has subject jurisdiction over the putative class claim in this case." (Id. (citing R&R at 10-13, and Denney, 443 F.3d at 264).) Moreover, the Report's cursory discussion of Denney in the context of Co-Options' motion to strike the class definition does not rectify this error. (See id. at 8.)

Regarding its Rule 12(b)(6) motion to dismiss, i.e., that putative class members who receive faxes as emails do not have TCPA claims to assert, Co-Options asserts the Magistrate Judge erred in concluding the AmeriFactors Ruling is not binding on this Court. (See id. (citing its underlying Reply, ECF No. 34, at 13, 13-14, & n.6).) It also claims "[t]he Report errs by failing to apply the TCPA's plain terms . . . and by failing to consider whether the TCPA applies at all to a fax sent to a cloud server (not a 'telephone fax machine') and transmitted over the internet (not 'a regular telephone line') as an email attachment (not 'paper')." (Id. at 9.)

Finally, Co-Options contends the R&R is erroneous because it ignores an overly broad class "that reaches four years of business conduct completely unrelated to the facts [Plaintiff] alleged regarding the defendants' July 2020 'Creative Roots' ad campaign.'" (Id. at 9 (citing Co-Options' underlying Support Memo at 17-18, and Reply at 10).) Co-Option further disputes the Report's conclusion that Co-Options has not established prejudice from this alleged overbroad class definition. (See id. at 10.) Rather, it takes the position that "[t]his explosion of the scope of the case far beyond the facts pled, and the consequent added costs of defense, are the very harms that Twombly and Iqbal sought to prevent," but which the Report ignores. (Id.)

B. The Kraft Defendants' Objections

As a preliminary matter, the Kraft Defendants assert that it was error for Magistrate Judge Locke to refuse to consider the Declarations in determining that Plaintiff has plausibly alleged the suffering of a concrete injury by each putative class member. (See Kraft Obj. at 2.) They make much of the fact that, notwithstanding the declarants consenting to receive the Faxes, they -- and others purportedly in the class -- use on-line fax services. The relevance of this distinction appears to be that entities using on-line fax services do not "suffer[] damages as a result of receipt of the unsolicited faxes, in the form of . . . paper and ink or toner consumed as a result." (FAC ¶ 35.)

As to their Rule 12(b)(1) Motion seeking dismissal for lack of standing, the Kraft Defendants would similarly fault the Magistrate Judge for not considering their proffered 2017 International Data Corporation Survey in the context of their Rule 12(b)(1) motion as "authority" that businesses are transitioning from phone-line faxes to digital-based fax services and (again, implicitly,) therefore, that the Plaintiff cannot show the purported class members have suffered any concrete injury warranting a showing of Article III standing.  (See Kraft Obj. at 3.)  The Kraft Defendants would further have this Court find error in the R&R since it "wholly disregards persuasive and relevant aspects of the AmeriFactors decision that support that members of the putative class likely received the Faxes through online means." (Id.; see also id. at 4 ("[T]he R&R ignores relevant facts that contradict allegations of the Amended Complaint concerning the standing of members of the putative class.").)  Moreover, the Kraft Defendants maintain that the Magistrate Judge was wrong to consider binding Circuit precedent when he recommending denying the Rule 12(b)(1) motions.   (See Kraft Obj. at 5 ("If the Court does consider the evidence that indicates that putative class members received the Faxes through online fax services, as it should, then Gorss and Melito are inapposite.  Neither case addresses whether online faxes cause a 'concrete injury' sufficient to confer Article III standing.").)  They, once more, rely upon the AmeriFactors

Ruling to advance their position that putative class members who receive faxes via online fax services cannot demonstrate "concrete injury" sufficient to confer Article III standing.   (See id. at 6.)

As to their Rule 12(b)(6) Motion, the Kraft Defendants content Magistrate Judge Locke erred in relying upon the Second Circuit's Gorss decision and not the AmeriFactors Ruling.   (See Kraft Obj. at 6-7.)   They argue "Gorss is not inconsistent" with the AmeriFactors Ruling, but inapposite to it since "the 'nuisance and privacy invasion' contemplated by Gorss, a case which did not involve online faxes, is necessarily absent in the context of online faxes."   (Id. at 7.)

As to their Rule 12(f) Motion to Strike, the Kraft Defendants assert that the R&R "largely ignores" their arguments that: (1) "the class should not include those who received the Faxes through online fax services"; (2) "the alleged class definition encompasses a class broader than the facts pleaded" in the FAC; and (3) Plaintiff "improperly alleges a 'fail-safe' class."   (Kraft Obj. at 7.)   They contend the R&R is internally inconsistent because it both suggests inquiring about the type of fax by which recipients received Faxes and rejects the Kraft Defendants' argument that "the putative class falls outside the ambit of Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006), where the Second Circuit concluded that jurisdiction over a class

only exists where that class is 'defined in such a way that anyone within it would have standing.'"   (Id. at 8; R&R at 19 (quoting Denney, 443 F.3d at 264).)   the Kraft Defendants also maintain that, contrary to the R&R "incorrectly asserting" that they "did not dispute the possibility of using self-identifying affidavits, they do.  (Kraft Obj. at 8.)  And, in any event, the use of such affidavits should be rejected since using the self-identifying affidavit methodology is not conducive to verification for accuracy.  (See id. at 8-9.)

Finally, the Kraft Defendants claim the R&R incorrectly asserts that certain factual issues have been conceded when no such concessions have been made.  (Id. at 9.)  For example, while the Kraft Defendants acknowledge Plaintiff alleges Co-Options sent the Faxes on their behalf, they have not admitted such.  (See id.)  Nor, contrary to the R&R's suggestion that Defendants "appear to concede" they caused the alleged injury which can be redressed by judicial relief, "the Kraft Defendants have consistently argued that members of the putative class have not suffered any injury in the first place and thus require no redress."  (Id. at 10 (first quoting R&R at 11; then citing Kraft Support Memo at 11-14).)

C. Plaintiff's Response

As an initial matter, Plaintiff asserts that in raising objections to the R&R, "Defendants largely restate the arguments previously presented" (Response at 2), thereby implying that the

appropriate standard of review is clear error.  Plaintiff also
responds that it "has sufficiently alleged jurisdiction with
regard to itself as well as each and every member of the proposed
class" (id. at 3) claiming, in essence, that there can be no doubt
that all who received the Faxes on standalone fax machines,
including itself, have standing, and that those who received the
Faxes "electronically" still suffered some of the injuries
alleged, e.g., "nuisance and privacy invasion" (id. at 4 (quoting
Gorss, 997 F.3d at 476)), which privacy claim stems from an 1890
Harvard Law Review article, The Right of Privacy, and which
warrants finding Article III standing (see id. at 5).  In addition
to Gorss, Plaintiff also relies upon Melito v. Experian Marketing
Solutions, Inc., 923 F.3d 85 (2d Cir. 2019) as supporting its
position since, in that case, the Circuit Court "specifically held
that the recipient of a text message has standing to complain of
TCPA violations." (Id. at 4-5.)  In sum, Plaintiff contends "the
R&R properly concluded that there is no standing problem with
respect to anyone in the class as defined." (Id. at 6.)

As to Defendants' Rule 12(b)(6) Dismissal Motions,
Plaintiff would have the Court overrule Defendants' objections to
the Magistrate Judge's rejection of the AmeriFactors Ruling,
highlighting that the "R&R makes a considered and in depth analysis
of the AmeriFactors [R]uling -- which is currently on appeal and
pending review by the full FCC," and "explains in detail how a

review of binding precedent in fact weighs against adherence to the AmeriFactors decision." (Id. at 6; see also id. at 7 (while recognizing that some courts agree or defer to the AmeriFactors Ruling, identifying others that have declined to do so).) The crux of its endorsement of the R&R's rejection of the AmeriFactors Ruling is that said Ruling is inconsistent with the teaching of Gorss Motel, i.e., "finding that a recipient's 'nuisance and privacy invasion' when receiving unsolicited fax advertisements and 'occupation of a plaintiff's fax machine, as well as use of its paper and ink,' are 'among the injuries intended to be prevented by' the TCPA." (Id. at 7-8.)

As to Defendants' motion to strike the class allegations, unsurprisingly, Plaintiffs maintain the Report got it right; Defendants have failed to carry their burden and "Plaintiff has established the existence of legal and factual issues which, if permitted to be borne out by the discovery process, might allow the Class Claim to succeed." (R&R at 18; see also Response at 9.) Plaintiff also maintains that, as the Report properly suggests (see R&R at 18-19), it is appropriate in this case to use self-identifying affidavits to ascertain the class's size, as they are capable of objective verification. (See Response at 9-10.) Thus, the Magistrate Judge's recommendation that "this matter be permitted to proceed to discovery" (R&R at 19) is correct as "[n]either Defendant has demonstrated that the current [class]

definition[] would include members who lack Article III standing."
(Response at 11.)

DISCUSSION

I.   Legal Standard[5]

  A district court "may accept, reject, or modify, in whole
or in part, the findings or recommendations made by the magistrate
judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3).
Any portion of such a report and recommendation to which a timely
objection has been made is reviewed de novo.   See 28 U.S.C. §
636(b)(1); FED. R. CIV. P. 72(b)(3).   "Objections to a report and
recommendation must be 'specific and are to address only those
portions of the proposed findings to which the party objections.'"
Fossil Group Inc. v. Angel Seller, LLC, No. 20-cv-2441, 2021 WL
4520030, at *2 (E.D.N.Y., Oct. 4, 2021) (quoting Phillips v. Reed
Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (cleaned up)).
General objections, or "objections that are merely perfunctory
responses argued in an attempt to engage the district court in a
rehashing of the same arguments set forth in the original papers
will not suffice to invoke de novo review."   Owusu v. New York
State  Ins.,  655  F.  Supp.  2d  308,  312-13  (S.D.N.Y.  2009)

---

[5]  The Court adopts the legal standards stated by Magistrate Judge
Locke in his Report as to: (1) a Rule 12(b)(1) Motion to Dismiss
(see R&R at 5-6); (2) a Rule 12(b)(6) Motion to Dismiss (see id.
at 7-8); (3) a Rule 12(f) Motion to Strike (see id. at 8-9); and
(4) the TCPA (see id. at 9-10), as to which no objections have
been raised and which are incorporated herein.

(quotations, alterations and citation omitted); see also Trivedi v. N.Y.S. Unified Court Sys. Office of Court Admin., 818 F. Supp. 2d 712, 726 (S.D.N.Y. 2011), aff'd sub nom Seck v. Office of Court Admin., 582 F. App'x 47 (2d Cir. Nov. 6, 2014) ("[W]hen a party makes only conclusory or general objections [] the Court will review the Report strictly for clear error.[] Objections to a Report must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (cleaned up)). Any portion of a report and recommendation to which no specific timely objection is made, or to which only general, conclusory or perfunctory objections are made, is reviewed only for clear error. Owusu, 655 F. Supp. 2d at 312-13; see also Bassett v. Elec. Arts, Inc., 93 F. Supp. 3d 95, 100-01 (E.D.N.Y. 2015).

## II.  Analysis

As a preliminary matter, the Court has reviewed the underlying Dismissal Motions and agrees with Plaintiff's contention that Defendants' Objections are largely reiterations of the arguments they advanced in support of those Dismissal Motions. Hence, the Court reviews the R&R for clear error.

### A. Defendants' Rule 12(b)(1) Motion to Dismiss

It is axiomatic that: (1) "federal courts are courts of limited jurisdiction," Purdue Pharam L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (cleaned up); (2) all suits filed in federal courts must be "cases and controversies of the sort

traditionally amenable to, and resolved by, the judicial process,"
Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102
(1998): and (3) a plaintiff must having standing to bring such a
suit, i.e., (a) plaintiff has suffered an injury in fact, (b) the
causation of which is fairly traceable to the challenged actions
of the defendant, and (c) the injury can be redressed by the
court's decision.  See Sprint Commc'ns Co., L.P. v. APCC Servs.,
Inc., 554 U.S. 269, 273 (2008); Lujan v. Defs. of Wildlife, 504
U.S. 555, 560-61 (1992).  As to the standing component and of
import here:  "In a class action, that means that at least one
named plaintiff must have standing." Cooper v. Bonobos, Inc., No.
21-CV-0854, 2022 WL 170622, at *2 (S.D.N.Y. Jan. 19, 2022) (citing
Frank v. Gaos, 139 S. Ct. 1041, 1046 (2019); Lewis v. Casey, 518
U.S. 343, 357 (1996)).

Where, as here, a defendant brings a fact-based Rule
12(b)(1) dismissal motion for lack of subject matter jurisdiction,
proffering evidence beyond the complaint and its exhibits, see
Carter v. HealthPort Tech., LLC, 822 F.3d 47, 57 (2d Cir. 2016),
a plaintiff "must come forward with evidence of [its] own to
controvert that presented by the defendant, or may instead rely on
the allegations in [its] pleading if the evidence proffered by the
defendant is immaterial because it does not contradict plausible
allegations that are themselves sufficient to show standing."
Matter of Trusts Established under the Pooling & Serv'g Agreements

relating to the Wachovia Bank Com. Mortg. Tust Com. Mortg. Pass-Through Certificates, Series 2007-C30, 375 F. Supp. 3d 441, 447 (S.D.N.Y. 2019) (cleaned up); see also Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 119 (2d Cir. 2017).

To the extent Defendants argue it was erroneous for the Magistrate Judge not to consider Co-Options' proffered Declarations in ruling on the Dismissal Motions, the Court overrules all objections on that basis. Indeed, by averring to having "agreed to receive fax offers like this one from the Sampling Store,[6]" each declarant also establishes exclusion from the proposed class. (Ramirez Decl., ECF No. 24-2, ¶ 3 (emphasis added); Jackson Decl., ECF No. 24-3, ¶ 3 (same); Wong Decl., ECF No. 24-4, ¶ 3 (same); Ezell Decl., ECF No. 24-5, ¶ 3 (same); compare FAC ¶ 39 (alleging proposed class), ¶ 41(a) (common question asking "[w]hether Defendants engaged in a pattern of sending unsolicited faxes" (emphasis added).) In turn, any distinction regarding the method of receipt of those faxes has no relevance here.

To the extent the Defendants would assign error to the Report because, in ruling on their Dismissal Motions, the Magistrate Judge would not consider other proffered evidence regarding the receipt of faxes via emails and/or cloud servers,

---

[6] As a reminder: Co-Options does business as "The Sampling Store". (See FAC ¶¶ 5-6.)

e.g., the 2017 Survey, those objections are also overruled.  At this nascent stage of the case, such proffered evidence is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.[7]  See, e.g., Katz, 872 F.3d at 119.   Indeed, Plaintiff's plausible allegations establish standing to bring this action on behalf of itself and the purported class because it alleges that it received the two unauthorized Faxes (FAC ¶¶ 13-14) –– as Plaintiff had no prior relationship with Co-Options [] and had not authorized the sending of [the Faxes] to Plaintiff (id. ¶ 26) –– on its "telephone facsimile equipment that automatically prints incoming faxes on paper using toner/ink" (id. ¶ 3), attempting to induce it "to obtain and offer free sampled of the new Creative Roots products for the purpose of inducing consumers to purchase them" (id. ¶ 22), i.e., "inform[ing] the recipient of products that are commercially available" (id. ¶ 23), but which "do not contain information on how to opt out of further faxes." (Id. ¶ 24.)  This violation of TCPA's prohibition against "us[ing] any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine . . . " 47 U.S.C.

---

[7]  In any event, the 2017 Survey is of questionable value as it is "[s]ponsored content".  See Glaz & Muscolino, IDC White Paper: Fax Market Pulse at 13 (2017), reprinted at https://www.opentext.com/file_source/OpenText/en_US/PDF/opentext -idc-survey-fax-market-pulse%20-en.pdf (cited in Kraft Support Memo, ECF No. 28-1, at 7 n.3).

§ 227(b)(1)(c), (see also FAC ¶ 33), resulted in Plaintiff "suffer[ing] damages . . . in the form of time, paper and ink or toner consumed as a result." (Id. ¶ 35.)  Based upon these plausible allegations, Plaintiff has stated an injury in fact, which is: (1) concrete, particularized, and actual; (2) fairly traceable to the Defendants' challenged actions, see, e.g., Faxes (Exs. A & B, attached to FAC); and (3) likely to be redressed by a favorable decision, see, e.g., TCPA, 47 U.S.C. § U.S.C. § 227(b)(3) (authorizing a private right of action for violation of TCPA and "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater"), thereby establishing standing.

To the extent Defendants object to the Magistrate Judge's recommendation that Defendants' Rule 12(b)(6) Dismissal Motions be denied based upon his refusal to apply the AmeriFactors Ruling, those objections are overruled.  As the Report correctly observes, the Second Circuit has not specifically addressed the AmeriFactors Ruling, which is currently on appeal and pending review by the full FCC. (See R&R at 15-16.)  Moreover, as explained in the R&R, the Second Circuit's Gorss Motels decision, which is binding precedent, weighs against adherence to the AmeriFactors Ruling.  Until the Circuit Court or the full FCC state otherwise, Plaintiff has plausibly alleged a TCPA "junk fax" claim.  And, even if the AmeriFactors Ruling -- that unsolicited faxes received

via an online fax service fall outside the scope of the TCPA statutory prohibition, which addresses unsolicited faxes received via telephone facsimile machines -- was to be considered, Plaintiff has still plausibly alleged a TCPA "junk fax" claim.  Distinctions between telephone fax machines and faxes received online or via email is more properly addressed in the context of class certification when the proposed class definition is addressed.  See, e.g., Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (explaining that pre-discovery motions to strike class allegations are generally "deemed procedurally premature").

To the extent the Defendants rely upon Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006), in their alternative bid to strike the class allegations, and assert the Magistrate Judge erred by disregarding same, that objection is overruled.  Denney was decided in the context of a fairness hearing on a final class action settlement, which included certifying the class, and not on a motion to dismiss before discovery and before any motion for class certification has been made.  See 443 F.3d at 262-63.  There is relevant significance in these different procedural postures.  As the Denney Court stated:

> We do not require that each member of a class
> submit evidence of personal standing.  At the
> same time, no class may be certified that
> contains members lacking Article III standing.

> The class must therefore be defined in such a
> way that anyone within it would have standing.

Id. at 263-64.  In other words, it is when certifying a class that
the court must ensure the class is defined in a manner that all
its members would have standing.   For now, "Plaintiff has
established the existence of legal and factual issues which, if
permitted to be borne out by the discovery process, might allow
the Class Claim to succeed."  (R&R at 18.)   Therefore, Defendants
are unable to meet their burden in moving to strike.  See Westside
Winery, Inc. v. SMT Acquisitions, LLC, No. 19-cv-4371, 2020 WL
8413554, at *3 (E.D.N.Y. Nov. 5, 2020) ("To prevail on a motion to
strike, the movant must establish that: (1) there is no question
of fact which might allow the claim to succeed; (2) there is no
question of law which might allow the claim to succeed; and (3)
the moving party would be prejudiced by inclusion of the claim."
(emphasis added; citation omitted)), report and recommendation
adopted sub nom., 511 F. Supp. 3d 256 (E.D.N.Y. 2021).   Moreover,
given the procedural posture of the case and that Defendants'
arguments regarding the means by which unsolicited faxes were
received are more properly directed to the question of class
certification, the Court finds no strong reason to strike the FAC's
Class Claim.  See id. ("Motions to strike are generally disfavored,
and should be granted only when there is a strong reason for doing
so." (quoting Illiano v. Mineola Union Free Sch. Dist., 585 F.

Supp. 2d 341, 357 (E.D.N.Y. 2008))).   Indeed, "it would be premature to decide this fact-specific argument at this juncture . . . .   [Instead, Defendants] may raise these arguments if [Plaintiff] moves for class certification pursuant to Federal Rule of Civil Procedure 23." Travis v. Navient Corp., 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020).

***

To the extent not specifically addressed, the Court has considered Defendants remaining objections, but finds them unpersuasive.   Rather, finding no clear error in Magistrate Judge Locke's thorough and well-reasoned Report, all of Defendants' objections are OVERRULED.

CONCLUSION

Accordingly, in the absence of clear error, **IT IS HEREBY ORDERED** that Defendants' Objections are OVERRULED, the R&R (ECF No. 42) is ADOPTED in its entirety, and Defendant Co-Options' Dismissal Motion (ECF No. 27) and the Kraft Defendants' Dismissal Motion (ECF No. 28) are each DENIED in their entirety.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  30th  , 2022
        Central Islip, New York